IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MARY JUNE ST. MARIE,

        Plaintiff,

v.                                        Civil Action No. 1:14cv175

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

## ORDER AND REPORT AND RECOMMENDATION

### I. INTRODUCTION

On October 17, 2014, Plaintiff Mary June St. Marie ("St. Marie" or "Plaintiff") filed this action for judicial review of an adverse decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. ECF No. 1. The Commissioner filed her answer on December 29, 2014. ECF No. 8. Plaintiff then filed her motion for summary judgement on January 12, 2015. ECF No. 11. The Commissioner filed her motion for summary judgement on February 26, 2015. ECF No. 15. On March 11, 2015, Plaintiff filed a response to the Commissioner's motion, and, on March 18, 2015, the Commissioner filed a sur-reply to Plaintiff's motion. ECF No. 17 & 18.

### II. FACTS

**A. Procedural History**

On February 22, 2011, and March 25, 2011, Plaintiff applied for DIB and SSI, respectively. R. 140-47. In both claims, Plaintiff alleged a disability beginning on August 2, 2010. R. 140, 142. Plaintiff's claims were initially denied on July 12, 2011, and upon reconsideration on December 21,

2011. R. 66-73. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and, on February 27, 2013, an ALJ hearing was held before ALJ Jeffrey P. LaVicka. R. 30-57, 93-94. Plaintiff, represented by counsel, testified at the hearing as did a vocational expert ("VE"). R. 30-57. On May 1, 2013, the ALJ found that Plaintiff "has not been under a disability, as defined in the Social Security Act, from August 2, 2010, through the date of" the ALJ's decision. R. 13-27. Plaintiff appealed the ALJ's decision to the Appeals Council, which denied review on August 27, 2014. R. 1-5. Plaintiff then timely brought her claim to this Court.

**B. Medical History**

The following medical history is relevant to the issue of whether substantial evidence supports the ALJ's findings.

<u>1. Physical Health History</u>

On November 10, 2010, Plaintiff was admitted to Johns Hopkins Bayview Medical Center for abdominal pain. R. 214. A colonoscopy was performed which revealed a transverse colon mass. *Id*. Pathology analysis revealed a tubular adenoma. *Id.* Plaintiff was again admitted to Johns Hopkins on December 17, 2010, for severe abdominal pain and later released on December 24, 2010. R. 290.

On May 13, 2011, Plaintiff was examined at SMART Pain Management by Raj Jari, M.D., for abdominal and hand pain. R. 350-53. Dr. Jari noted that he intended to "proceed with caution [regarding] pain medications and opiods especially given the patient has a [history of] substance abuse and severe depression." R. 352. Dr. Jari stated that medication "will only be provided as part of a multi-dimensional treatment plan . . . ." *Id.*

On May 26, 2011, Plaintiff was again examined at SMART Pain Management, this time by Ira Kornbluth, M.D. R. 360-61. During the examination, Plaintiff stated that she had run out of

opiods. R. 360. Additionally, Plaintiff tested positive for cocaine use and admitted using cocaine. *Id.* Dr. Kornbluth "reiterated . . . that [they] will not provide opiods." *Id.* It was noted that Plaintiff "was given contact [information] of other pain [doctors] who may be willing to evaluate her and assume care." *Id.*

On July 13, 2011, Plaintiff was admitted to United Hospital Center for "constant abdominal pain, diarrhea and nausea . . . ." R. 404. The hospital report noted that Plaintiff "ran out of pain [medication]" the day before. *Id.* Prior to being discharged, Plaintiff was prescribed pain medication. R. 408.

On August 9, 2011, Plaintiff was admitted back to United Hospital Center for a seizure. R. 446-47. That same day, Plaintiff tested positive for cocaine. R. 440. According to records, Plaintiff was prescribed antiseizure medication. R. 463.

On September 8, 2011, Plaintiff was examined at United Hospital Center. R. 714-16. Records noted that Plaintiff "insist[ed] on pain medication as she was getting morphine . . . in the past." R. 715. On September 19, 2011, Plaintiff was again examined at United Hospital Center. R. 717. Records state that doctors "[d]iscussed in detail again today that [she] is not a candidate for any opiod[] [medication]." *Id.* On October 9, 2011, and November 12, 2011, Plaintiff was again admitted to United Hospital Center for abdominal pain. R. 524-27, 564-65.

On November 18, 2011, Plaintiff was examined at West Milford Health Center "to establish care." R. 613. Plaintiff explained that she was taking morphine while being treated in Maryland, however, Plaintiff was "instructed that she would not get this medication" at the health center. *Id.* Plaintiff was prescribed other medication. *Id.*

On December 12, 2011, Fulvio Franyutti, MD, performed a Physical Residual Functional

3

Capacity Assessment of Plaintiff ("Physical RFC"). R. 411-18. Dr. Franyutti found that Plaintiff could lift twenty pounds occasionally and ten pounds frequently. R. 412. Dr. Franyutti concluded that Plaintiff could walk about six hours in an eight hour workday and sit about six hours in an eight hour workday. *Id.* Dr. Franyutti found that Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but could never climb ladders, ropes, or scaffolds. R. 413. Dr. Franyutti found that Plaintiff should avoid concentrated exposure to extreme cold and heat, vibration, and fumes and odors. R. 415.

On December 27, 2011, Plaintiff was hospitalized for abdominal pain. R. 575-77. Plaintiff "expressed some relief following morphine" treatment. R. 577. On February 2, 2012, Plaintiff was again hospitalized and instructed to follow up with her primary care physician in two to three days. R. 608. Between March and September 2012, Plaintiff was admitted to United Hospital Center multiple times alleging abdominal pain and other ailments. R. 629-960.

On September 4, 2012, Plaintiff was examined by John Manchin, II, M.D. R. 1026-27. Dr. Manchin noted that Plaintiff has "a history of chronic pancreatitis . . . a colon mass that was removed . . . chronic pain from her abdomen and bloating . . . [and] chronic constipation." R. 1026. On December 3, 2012, Dr. Manchin noted that Plaintiff recently had a colonoscopy preformed "and everything was good." R. 1030. On December 31, 2012, Plaintiff visited Dr. Manchin's office for a refill of medication. R. 1031. However, the office was unable to "refill her Vicodin . . . [because] she just recently got Tylenol #3 from another doctor." *Id.*

2. Mental Health History

In February 2011, Plaintiff underwent a psychiatric consultation at Johns Hopkins Bayview Medical Center. R. 265-71. Plaintiff was diagnosed with post-traumatic stress disorder and major

4

depression - chronic. R. 270. Plaintiff was noted to have borderline personality traits and other problems such as "discord with her family . . . joblessness, chronic illness, homelessness, [and] unresolved abuse issues." *Id.* Plaintiff was assessed an "Axis V" score of 55. *Id.* Plaintiff denied depression while admitted at United Hospital on October 21, 2011. R. 517.

On December 21, 2011, G. David Allen, Ph.D., performed a Psychiatric Review Technique. R. 419-32. Dr. Allen noted that Plaintiff allegedly suffered from major depressive disorder and post-traumatic stress disorder. R. 422-24. However, Dr. Allen found that Plaintiff had no restriction of activities of daily living, difficulties in maintaining social functioning, difficulties in maintaining concentration, persistence, or pace, or episodes of decompensation. R. 429.

On January 26, 2012, Plaintiff was evaluated by Amy Hebb Psy. D. R. 918-23. Dr. Hebb diagnosed Plaintiff with recurrent major depressive disorder and assessed an Axis V score of 51. R. 922. Dr. Hebb noted that Plaintiff "reported low mood nearly every day for as long as she can remember." R. 923. Plaintiff attended individual therapy with Dr. Hebb from February 2012 to May 2012. R. 924. However, Dr. Hebb noted that Plaintiff "made little progress in treatment due to the moderate level of depressive symptoms, chronic pain, and frequent missed appointments." *Id.*

On May 29, 2012, Dr. Hebb completed a Medical Source Statement. R. 883-86. In the Statement, Dr. Hebb noted that people with depression, like Plaintiff, "demonstrate impairments in [the] ability to think, concentrate, or make decisions [and] may also appear distracted and complain of memory difficulty." R. 883. Dr. Hebb stated that Plaintiff would have moderate difficulties in social interactions and adaptation in the workplace. R. 884. Dr. Hebb again diagnosed Plaintiff with recurrent major depressive disorder and noted that "[h]er medical problems contribute/intensify her current psychological difficulties." *Id.* Lastly, Dr. Heb concluded that Plaintiff would likely be

absent from work as a result of her impairments or treatment more than four times a month. R. 886.

From November 2012 to February 2013, Plaintiff was treated by Muhammad Salman, M.D. R. 1038-41. On November 1, 2012, Dr. Salman diagnosed Plaintiff with post-traumatic stress disorder and alcohol dependence. R. 1041. In subsequent treatment notes, Dr. Salman stated that Plaintiff reported feeling pain and feeling depressed. R. 1039-40. On February 12, 2013, Dr. Salman also completed a Medical Source Statement. R. 1034-37. In the Statement, Dr. Salman reported that Plaintiff would have a moderately severe difficulty in performing activities within a schedule, maintaining regular attendance, and being punctual. R. 1034. Dr. Salman also found that Plaintiff would have moderate difficulties in social interactions and adaptation in the workplace. R. 1035. Dr. Salman noted that Plaintiff's alcohol abuse was in recession. R. 1036. Lastly, like Dr. Hebb, Dr. Salman concluded that Plaintiff would likely be absent from work as a result of her impairments or treatment more than four times a month. R. 886, 1037.

**C. Testimonial Evidence**

Testimony was taken at the ALJ hearing held on February 27, 2013. R. 30-57. The following portions of the testimony are relevant to the disposition of this case.

1. St. Marie's Testimony

The ALJ asked the Plaintiff several questions related to her personal background, health, and current living situation. Plaintiff testified that she is single and lives in a house with a male friend. R. 35-36. Plaintiff stated that she is not working and receives food stamps. R. 40. Plaintiff has a driver's license and drives nearly once a week for appointments or errands. R. 37. Plaintiff stated that she smokes "a couple cigarettes a day" and has been instructed to quit smoking. R. 37-38.

Plaintiff testified that she left school in the eleventh grade and has subsequently attempted

to gain a GED, however, Plaintiff stated that she "can't understand and . . . can't comprehend" the required tests. R. 38. Plaintiff stated that she has not signed up to take the tests again because she does not believe that she is able to pass. R. 39.

Plaintiff also chronicled her work history. In 2000, Plaintiff stated that she worked at an assisted living center. R. 42. In 2010, Plaintiff testified that she worked at a VFW as a bartender. R. 41. Also in 2010, Plaintiff stated that she was briefly employed at McDonald's but was terminated because she missed too much work due to pain preceding a colon cancer diagnosis. R. 40-41. Since, Plaintiff testified that she has not looked for work because she is unable to concentrate and suffers from depression. R. 41. Plaintiff stated that she did not work while she was living with her husband from 2000 to 2010. R. 42.

Plaintiff stated that her "mental status" most interferes with her ability to work. R. 43. Plaintiff underwent surgery in 2010 to remove a mass from her colon and last attended physical therapy in 2007. *Id.* Plaintiff testified that she is taking two medications for depression and Oxycodone "for the pain." R. 45. The ALJ inquired about allegations of substance abuse and Plaintiff stated that she has not "had any alcohol in two years" and only consumed cocaine once in her life. R. 45. Plaintiff testified that she has never been in treatment for drugs or alcohol. *Id.*

Plaintiff testified that she performs some housework. R. 46. Plaintiff stated that she sometimes cooks, shops, uses the dishwasher, dusts, and sweeps, but has not performed laundry in several months because of difficulty bending. *Id.*

Next, Plaintiff was examined by her counsel. Plaintiff testified that she has severe stomach pain and pain in her legs. R. 48. Consequently, Plaintiff stated that she is unable to move or bend at times. *Id.* Plaintiff stated that when she feels "so much pain that [she] can't take it" she goes to

the hospital. R. 50. Consequently, Plaintiff testified that she goes to the hospital roughly once a month. *Id.*

2. The VE's Testimony

A VE also testified at the hearing. Before presenting a hypothetical to the VE, the ALJ stated that he was "going to give [Plaintiff] the benefit of the doubt" and "assume, without necessarily deciding that she doesn't have any past relevant work." R. 54. Next, the ALJ asked the VE to

> assume a hypothetical individual the same age, education, and work experience as the claimant. Who retains the capacity to perform light work with a sit/stand option allowing the person to briefly for one to two minutes alternate sitting or standing positions at thirty minute intervals without going off task. Is limited to no foot control operation with the right foot. Who's limited to occasional posturals except no climbing of ladders, ropes, or scaffolds. Who must avoid concentrated exposure to extreme cold and heat. Who must avoid concentrated exposure to wetness and humidity. Who must avoid concentrated exposure to excessive vibration. Who must avoid concentrated exposure to irritants. Who must avoid all exposure to unprotected heights, hazardous machinery, and commercial driving. Who's work is limited to simple, routine, and repetitive tasks requiring only simple decisions with no fast paced production requirements and few workplace changes. Must have no interaction with the public and only occasional interaction with co-workers and supervisors. Are there jobs in the regional or national economy that such an individual could perform?

R. 54-55. The VE testified that there were jobs such an individual could perform in the regional or national economy. R. 55. The VE identified three positions–mail clerk (DOT number 209.687-026), sorter (222.687-014), and electronic worker (DOT number 726.667-022)–as positions at the SVP 2 and unskilled level that the hypothetical individual could perform. *Id.*

The VE further testified that a typical employer would not tolerate an employee being "late or absent more than once day per month" or off task more than fifteen percent of the workday. R. 55-56. The VE stated that a typical employer permits two fifteen minute breaks and a half-hour lunch. R. 55. On examination by Plaintiff's counsel, the VE stated that a person would not be employable if they were in the hospital two or more days a month. R. 56.

## III. ALJ FINDINGS

In determining whether Plaintiff was disabled, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. The first step in the process is determining whether a claimant is currently engaged in substantial gainful activity. §§ 404.1520(b), 416.920(b). If the claimant is not engaging in substantial gainful activity, then the second step requires the ALJ to determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment or combination of impairments, then the analysis moves to the third step in the sequence, which requires the ALJ to determine whether the claimant's impairments or combination of impairments meets or equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). §§ 404.1520(d), 416.920(d). If an impairment meets or equals a listed impairment, the claimant is disabled. *Id.* However, if the impairment does not meet or equal a listed impairment, the ALJ must determine the claimant's residual functional capacity ("RFC"), which is the claimant's ability to do physical and mental work activities on a sustained basis despite the limitations of his impairments. §§ 404.1520(e), 416.920(e). After determining the claimant's RFC, the ALJ must determine, at step four, whether the claimant has the RFC to perform the requirements of his past relevant work. §§ 404.1520(f), 416.920(f). If the claimant does not have the RFC to do his past relevant work, then he has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, at the final step in the process, that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's RFC, age, education, and work experiences. §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868–69 (4th Cir.1983).

9

Here, as a preliminary matter, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act "as to be insured for such benefits since August 2, 2010." R. 18. At step one of the sequential process, the ALJ found that Plaintiff had "not engaged in substantial gainful activity since August 2, 2010, the alleged onset date." *Id.* At step two, the ALJ found that Plaintiff had "the following severe impairments: chronic obstructive pulmonary disease; malignant tubular adenoma of transverse colon, status post removal; status post knee replacement; and depression . . . ." *Id.* At the third step, the ALJ found that none of Plaintiff's impairments met or medically equaled the severity of any of the of impairments contained in the Listings. R. 19. In order to complete step four of the process, the ALJ determined that Plaintiff had the RFC to perform

> a range of work activity that: requires no more than a light level of physical exertion; affords a sit/stand option with an opportunity to alternate between sitting and standing for 1 to 2 minutes every 30 minutes throughout an eight hour work day without going off task; requires no foot control operation with the right foot; requires no climbing of ladders, ropes or scaffolds and no more than occasional balancing, climbing ramps/stairs, crawling, crouching, stooping, or kneeling; avoids concentrated exposure to extreme heat or cold, humidity, wetness, excessive vibration, and irritants; avoids all exposure to hazardous machinery, commercial driving, unprotected heights; involves only simple, routine, and repetitive tasks with simple decision making performed in an environment free of fast paced production requirements and involving few work place changes; and involves no more than occasional interaction with coworkers and supervisors and no interaction with the public.

R. 20. At step four, the ALJ found that Plaintiff "has no relevant past work . . . ." R. 25. Finally, at the final step, the ALJ found that "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs in that exist in significant numbers in the national economy that [Plaintiff] can perform." R. 26.

## IV. MOTIONS FOR SUMMARY JUDGEMENT

**A. Contentions of the Parties**

In her motion for summary judgment, Plaintiff alleges that because Dr. Salman's and Dr. Hebb's opinions were "mischaracterized," a "manufactured" conflict was created by the ALJ to discount Dr. Salman's and Dr. Hebb's medical opinion in his unfavorable decision. ECF No. 12 at 11. Plaintiff argues that the ALJ "mischaracterized the evidence from Dr. Salman and [Dr.] Hebb concerning drug use," however both Dr. Salman and Dr. Hebb "clearly addressed [Plaintiff's] supposed drug abuse." *Id.* Thus, Plaintiff seeks this Court to reverse the ALJ's decision or "remand the decision for a proper evaluation of the entire case record." *Id.* at 12.

The Commissioner argues that the ALJ correctly found the opinions of Dr. Salman and Dr. Hebb to be "not entitled to controlling weight." ECF No. 16 at 13. The Commissioner contends that Plaintiff "misunderstands the ALJ's decision." *Id.* The Commissioner claims that the ALJ explained that Dr. Salman's and Dr. Hebb's "opinions did purport to address drug abuse–but, in refusing to acknowledge Plaintiff's recent drug abuse, [their] opinions were inconsistent with the evidence of record." *Id.* The Commissioner concludes that because the ALJ's statements were not a mischaracterization of the evidence, substantial evidence supports the ALJ's unfavorable decision.

**B. The Standards**

<u>1. Summary Judgment</u>

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

2. Judicial Review

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 664-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3).

**C. Discussion**

Plaintiff's claim is based on the ALJ's alleged "misrepresentation of the contents of the opinions from treating psychiatrist Dr. Salman and treating psychologist Amy Hebb." ECF No. 12 at 6. Due to this "misrepresentation," Plaintiff argues that the ALJ's decision to grant Dr. Salman and Dr. Hebb "only partial weight" is based on legal error and not supported by substantial evidence.

In general, in determining disability status, the ALJ must consider all medical opinions in the case record. 20 C.F.R. §§ 404.1527(b), 416.927(b). ALJs evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant; (2) the treatment relationship between the physician and the applicant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist. §§ 404.1527(c), 416.927(c). "Courts often accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (quoting *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001)). However, "although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). Accordingly, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996); see also *Evans v. Heckler*, 734 F.2d 1012, 1015 (4th Cir. 1984) ("The opinion of a claimant's treating physician is entitled to great weight and may be disregarded only if there is persuasive contradictory evidence.").

Ultimately, the Commissioner is "responsible for making the determination or decision about whether [a claimant] meet[s] the statutory definition of disability." 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Nevertheless, an ALJ must provide "good reasons" for the weight given to a treating source's opinion. §§ 404.1527(c)(2), 416.927(c)(2). SSR 96-2 further provides:

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion

and the reasons for that weight.

SSR 96-2P, 1996 WL 374188 (July 2, 1996).

In his May 1, 2013, decision, the ALJ discussed his rational for providing "only partial weight" to the medical opinions of Dr. Salman and Dr. Hebb:

> [O]nly partial weight is accorded to the assessments of the claimant's treating psychologist, Amy Brown Heb, Psy.D. and psychiatrist Muhammad Salman, M.D. Both report that the claimant is mildly to moderately deficient in social functioning and concentration, persistence, and pace, which is consistent with the undersigned's findings, but also report that the combination of the claimant's physical and mental impairments would cause her to be absent from work more than four times a month. This is not supported by the objective evidence discussed . . . and appears related to the claimant's subjective reporting of her physical symptoms, which is not found to be fully credible. In addition, both fail to acknowledge the claimant's possible drug seeking behaviors, making their opinions as to the claimant's absences and the cause of those absences less reliable.

R. 25 (citations omitted). It appears to the undersigned that the ALJ afforded only partial weight to Dr. Salman's and Dr. Hebb's medical opinions for two reasons: (1) Dr. Salman and Dr. Hebb's belief that Plaintiff would be absent from work more than four times a month is based on Plaintiff's subjective, and not credible, reporting; and (2) both Dr. Salman and Dr. Hebb failed to "acknowledge [Plaintiff's] possible drug seeking behaviors" in their medical statement forms. *Id.*

1. The ALJ's Credibility Analysis

The ALJ's first justification in providing only partial weight to the medical opinions of Dr. Salman and Dr. Hebb was based on their apparent reliance on Plaintiff's subjective reporting. R. 25. Thus, because the ALJ found Plaintiff to be not "fully credible," the ALJ found Dr. Salman's and Dr. Hebb's medical opinions less reliable. *Id.*

While objective medical evidence of pain "is a useful indicator . . . in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those

symptoms, such as pain, may have on [a claimant's] ability to work . . . ." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2), in many cases, symptoms, such as pain, "suggest a greater severity of impairment than can be shown by objective medical evidence alone." SSR 96-7p, 1996 WL 374186 (July 2, 196); *see also Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996) ("[B]ecause pain is subjective and cannot always be confirmed by objective indicia, claims of disabling pain may not be rejected "*solely* because the available objective evidence does not substantiate the claimant's statements" as to the severity and persistence of her pain.") (emphasis in original) (quoting 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)). In addition, SSR 96-7p requires that

> If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms. The adjudicator must then make a finding on the credibility of the individual's statements about symptoms and their functional effects.

SSR 96-7 at *4

A two-part test is used for evaluating the limiting effects of subjective symptoms. *Craig*, 76 F.3d 585 (4th Cir. 1996); 20 C.F.R. §§ 404.1529, 416.929. First, objective medical evidence must show the existence of a medical determinable impairment "'which could reasonably be expected to produce' the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 594 (quoting 20 C.F.R. § 404.1529(b)). In other words, "no symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms." SSR 96-7p at *1. Second, after the claimant has met this threshold obligation of showing an impairment reasonably likely to cause the pain claimed, the adjudicator

must evaluate the intensity, persistence, and limiting effects of the claimant's pain and other symptoms in order to determine the extent to which they affect her ability to work. *Craig*, 76 F. 3d at 595; 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); SSR 96-7p. In making this evaluation, the ALJ must consider all of the available evidence, including "the claimant's medical history, medical signs, and laboratory findings . . . any objective medical evidence of pain . . . and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." *Craig*, 76 F.3d at 595 (internal citations omitted).

Further, "[b]ecause [the ALJ] had the opportunity to observe the demeanor and to determine the credibility of the Claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976)). Therefore, the Court "will reverse an ALJ's credibility determination only if the Claimant can show it was 'patently wrong'" *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (quoting *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990)).

Here, the record illustrates that the ALJ evaluated Plaintiff's symptoms with the two-part test found in *Craig* and the factors outlined in 20 C.F.R. §§ 404.1529, 416.929, and SSR 96-7p. In accordance with the first step of the *Craig* test, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms . . . ." R. 21. The ALJ addressed Plaintiff's medical history at length, including Plaintiff's history of abdominal and back pain and alleged mental impairments. R. 21-25.

Next, the ALJ considered whether Plaintiff's subjective statements regarding her symptoms were substantiated by, or conflicted with, the objective evidence in the record, and found that

Plaintiff's "statements concerning the intensity, persistence and limited effects of these symptoms are not entirely credible . . . ." R. 21. In making this credibility determination, the ALJ cited several "factors that undermine the credibility of the claimant's allegations." *Id*. First, the ALJ noted that "[d]espite reports of chronic severe pain" Plaintiff nevertheless testified "that she is able to shop in stores, do a little cleaning, prepare sandwiches and frozen dinners, take care of her personal needs . . . pay bills, and handle bank accounts, read, and watch television." *Id*. (citing R. 186-93). Next, the ALJ discussed that the Plaintiff has provided "inconsistent reporting." *Id*. For example, the ALJ noted that Plaintiff has offered two different reasons why she stopped working. During the ALJ hearing, Plaintiff testified that she was terminated because of her ailments. R. 40-41. However, "she told her psychologist that she stopped working to take care of her mother after she had a stroke." R. 21. The ALJ also discussed that Plaintiff testified that she only used cocaine once, but "the record shows two positive drug screens for cocaine." *Id*. (citing R. 346-55, 460-98). Lastly, the ALJ found that Plaintiff's prior drug use and "possible drug seeking behavior" demonstrated a lack of credibility. *Id*. The ALJ discussed Plaintiff's "numerous emergency room visits where she obtains narcotic pain medications, but then fails to follow up for treatment with a physician after discharge." *Id*. Furthermore, the ALJ raised that Plaintiff "has switched physicians several times when they refuse to give her pain medication" and "at least one doctor ceased serviced due to her noncompliance with medications . . . ." *Id*.

Because the Plaintiff did not show that the ALJ's credibility determination was "patently wrong" and the ALJ's determination was "sufficiently specific," the ALJ's decision here is supported by substantial evidence. *Powers*, 207 F.3d at 435; SSR 96-7P. The undersigned finds that the ALJ correctly followed the *Craig* test in evaluating Plaintiff's subjective symptoms. Additionally, the

17

Court finds that more than substantial evidence exists to support the ALJ's credibility findings.

2. The ALJ's Contention that Dr. Salman and Dr. Hebb Failed to Discuss Plaintiff's "Drug Seeking Behavior"

The ALJ's second justification in providing only partial weight to the medical opinions of Dr. Salman and Dr. Hebb was based on the ALJ's claim that "both fail[ed] to acknowledge the claimant's possible drug seeking behaviors, making their opinions as to the claimant's absences and the cause of those absences less reliable." R. 25.

However, in Dr. Hebb's May 29, 2012, medical source statement she found that Plaintiff "used a substance in [the] past, but has no recent use–her symptoms are not related to substance use, as [her] depression preceded substance use. Essentially, any use of substances can be correlated to additional symptoms of depression (i.e., unhealthy coping)." R. 885. Similarly, on February 12, 2013, Dr. Salman found that Plaintiff "had a past [history] of [alcohol] abuse and it's in remission [with] [n]o relapse reported in [the] last 3 years." R. 1036.

An apparent misstatement of the record prevents the undersigned from properly evaluating whether substantial evidence supports the weight given to Dr. Salman and Dr. Hebb. *See* SSR 96-2P, 1996 WL 374188 (July 2, 1996) (explaining that "[p]aragraph (d)(2) of 20 CFR 404.1527 and 416.927 requires" an ALJ's decision to "contain specific reasons for the weight given to the treating source's medical opinion . . . and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

The Commissioner argues that the ALJ's opinion clearly meant that "in refusing to acknowledge Plaintiff's recent drug abuse, Dr. Hebb and Dr. Salman's opinions were inconsistent with the evidence of record." ECF No. 16 at 13. The undersigned does not agree with this

18

contention. The ALJ found that both Dr. Salman and Dr. Hebb failed to acknowledge "possible drug seeking behaviors." R. 25. However, in the record, both Dr. Salman and Dr. Hebb discuss Plaintiff's drug abuse and both contend that Plaintiff is now sober. R. 885, 1036 (finding that Plaintiff's alcohol abuse is "in remission" and Plaintiff "used a substance in the past, but has no recent use."). It appears these reassurances by Dr. Salman and Dr. Hebb also address the ALJ's concern of Plaintiff's alleged drug seeking behavior. However, even if the ALJ's opinion is that Dr. Salman's and Dr. Hebb's medical opinions are inconsistent with the record because they specifically failed address alleged "drug seeking behavior," then the ALJ has still failed to identify and provide specific inconsistencies between Dr. Salman's and Dr. Hebb's medical opinions and the record. Thus, because the ALJ failed to "contain specific reasons for the weight given," the decision must be remanded for further consideration. SSR 96-2P at *5.

In conclusion, although the undersigned finds that substantial evidence supports the ALJ's finding as to Plaintiff's credibility–which clearly impacted the ALJ's assessment of the weight given to Dr. Salman and Dr. Hebb–the ALJ's decision to provide "only partial weight" is not supported by substantial evidence due to the apparent misstatement of the record.

## V. ORDER AND RECOMMENDATION

The Commissioner's motion for leave to file sur-reply is **GRANTED**. ECF No. 18. Further, I recommend that Plaintiff's motion for summary judgment, ECF No. 11, be **GRANTED IN PART AND DENIED IN PART** and the Commissioner's motion for summary judgment, ECF No. 15, be **DENIED** and the case be remanded back to the ALJ for the limited purpose of evaluating the proper weight to be afforded Dr. Hebb and Dr. Salman in light of Dr. Hebb's and Dr. Salman's contentions about Plaintiff's past substance abuse and recent sobriety.

19

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

DATED: June 30, 2015

/s/ *James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE